Good morning, Your Honors. My name is Carl Gunn. I'm representing Rachel Lewis and her minor son. My minor client's guardian, Adelightim, who's actually got a law degree, suggests an analogy to our case that I think is a fairly reasonable one to consider. Under the defendant's theory, jailers can take a man who was bleeding to death or with some other debilitating or fatal emergency condition and do absolutely nothing for him and escape liability if they could beat the clock by releasing him before he died. And do we assume his condition did not worsen during that time? I think, well, yes, it was his condition. But basically, I think Well, doesn't that make a difference? I mean, if the condition worsens during that time, then there's a clear argument that the State has created or at least enhanced the danger. But if, in fact, nothing changes, if it turns out his disease isn't a visible bleed, but he has cancer that's been undetected but needs treatment and nobody notices it for the 14 hours, then nobody would expect the county to be liable. There's no question, Your Honor, I think what the State would have to do is to affirmatively worsen the condition as opposed to have it worsen on its own, and you're hypothetical. But I think you're right. The State certainly has to know about the condition. But that's a question for summary judgment, trial, discovery, those sorts of things. There is an allegation in the complaint in this case. And remember, here we're dealing with a case where a complaint got dismissed at the very start without even leave to amend being granted. There is an allegation in this case that the defendants knew of Mr. Lewis's condition. Conceitedly, Mr. Lewis's condition, at least on the face of the complaint, is probably not as extreme as the hypothetical I and my client's guardian just posed. But I think whether it gets as extreme or whether it gets extreme enough is precisely the sort of question you deal with through the discovery, summary judgment, and trial process. Or perhaps by dismissing a complaint and requiring more detail in an amended complaint, but not even that opportunity was given here. I think the only way that the ---- I'm sorry. On this amended complaint issue, what request was made to the Court to amend or supplement the complaint? Well, Your Honor, there was a request at the end of both oppositions that if the motion to dismiss was granted, leave was sought to amend the complaint. But was there any description as to how it would be amended? I don't think there was any description as to how it would be amended. I mean, it's one thing to offer more specifics with regard to why a given allegation is plausible. I think it's another one to come up with a new theory, a new basis for saying somebody should be held factually liable. And, I mean, do you understand that distinction? I don't. Well, what's suggested in the complaint? Do you suggest would have been ---- what in the complaint could have been ---- could have solved the problems by amendment? Well, Your Honor, to go back to the Court's question that, first of all, there's no case law that says a party seeking leave to amend the complaint has to proffer all the things he would add to the complaint in an amendment. It's not reason for the judge to anticipate, well, maybe you've got more than you've already presented, is there? Well, except the case law says that leave to amend should liberally be granted even when it's not requested, frankly. But only if there's a reason. I mean, frequently we have pleading cases. Pleading deficiencies, you automatically make sure the person has a chance to plead. The idea that I can go off and come up with a new argument that's going to win the next time, I get a do-over automatically, no case would ever end because somebody could always come up with a new theory of some kind. Well, Your Honor, I think there's ---- there's a number of possibilities about things that could be added to the complaint here. I actually don't ---- And were they ---- and what my question is, were they suggested to the district court? It's one thing to offer a blanket, well, give me another chance, I might come up with something different. It's another to tell the district court, I can solve that problem, Your Honor, with this kind of amendment. They weren't, Your Honor, but there's no requirement. That's not a requirement in the leave to amend case law. The leave, there is nothing and no authority cited by the other side and no authority that I've found out there that says you only get leave to amend if you affirmatively suggest to the judge the things you'll offer in amendment. Sometimes what you need to do is when you hear the reasons, the complaint is suggested as being deficient, you might need to go out and do some additional investigation. You might need to sit down and go through the complaint a little more carefully. I give you a ---- And at that point you move to leave for amend. Well, and the plaintiffs in this case did in their opposition to the motion to dismiss request leave to amend if the motions were granted after initially opposing them. Now, our point, of course, is that at the complaint stage where you only need general allegations and where allegations are led most or read most favorably to the plaintiff, that what was in there was enough. There was an allegation that there was deliberate indifference. There was an allegation that the defendants have subjective knowledge of my client's condition. There was an allegation that they failed to do something. There was an allegation that the failure to do something was a cause in fact and a proximate, that the death was a proximate result of that failure. Now, those are things that certainly would have been disputed by the other side, and maybe the other side would have won a summary judgment motion even. Maybe they would have won a trial. Now, there is no Ninth Circuit case in these deliberate indifference cases. There is not a single Ninth Circuit case out there where there has been a judgment on the pleadings in the motion to dismiss where there wasn't even an answer filed for the other side or some sort of discovery or summary judgment. The only way, Your Honor, I think the defendants can win in this case on this at this stage of the proceedings is if COSHA, the First Circuit opinion in COSHA is the law of this circuit. But it is not the law of this circuit. It is dramatically inconsistent and in contrast to the law of this circuit as reflected in the Kahn case, which is what the district court wanted to file. How long was the plaintiff in Kahn in custody? I think it was a few hours. The first time. I mean, the difference in Kahn factually is that the plaintiff came back into custody. At the time he died. But the point of Kahn, Your Honor, Kahn sets out a very clear three-step test. One is, was there a condition that created a serious risk? The second was, did the defendants know that condition and were they deliberately indifferent to it? And third, and this is where the Ninth Circuit approach in Kahn is directly conflicting with the First Circuit approach in COSHA and totally consistent with the district report in COSHA, third, was it a cause of the harm that eventually happened? And the 1983 violation is the failure to give treatment while in custody. Where the harm happens isn't what matters. What matters is whether the harm was a result of what was done or not done in custody. Kahn, it's very interesting, a lot of the point in the COSHA First Circuit opinion is that we're not going to use the tort concepts of causation. They don't apply in 1983. Once a person is out of custody, that's it. We get to wash our hands or the State gets to wash their hands of it. But that's precisely what — I'm not sure that it spoke quite so broadly. It points out, for example, that it was 14 hours after he left custody. This is 12 hours after he left custody. I agree. I agree. I was speaking a little too strongly. But they came close to saying that. What they did say very clearly is we don't use tort principle, tort causation principles. But COSHA — I mean, the Kahn, the Ninth Circuit case, clearly does use tort circuit. What they cite, they talk about — first they talk about the tort concepts, cause and back and proximate cause. And if you look carefully at those sections in the opinion, Your Honor, I look back at them as I was preparing for this argument, the authority they cite is the classic tort authority that we all saw from law school, Prosser and Keaton on torts. So the Ninth Circuit clearly does use tort causation principles. The First Circuit COSHA opinion clearly rejects them. And the District Court COSHA opinion clearly follows Kahn. So COSHA is not the law of the circuit. If COSHA is not the law of the circuit, we get down to three factual questions in the case. Whether the plaintiff's decedent had a serious medical condition, which includes psychiatric conditions under this Court's law. Two, whether the defendants, the various defendants, knew of that condition and were deliberately indifferent to it. And third, was that deliberate indifference a cause of what happened? Now, it may turn out that the answer to one or all those questions is no. But those questions have never been decided by this Court in a case at this motion-to-dismiss stage. The allegations here are certainly sufficient. If simply the State and county defendants, for example, complain sort of that it's not enough to just allege subjective knowledge and not enough to just allege deliberate indifference, not enough to simply allege it was a cause, we would submit that is enough. But if it's not, then give us leave to amend and we'll fill that out. That's where the leave to amend, Your Honor, comes in. I don't want to go through them all specifically, but if the Court looks at my opening brief at pages 35 to 36, my opening brief at pages 37 to 38, and my reply brief at pages 11 to 12, I just – I hypothesize about 10 to 15 possible examples of what might be done if something was really necessary to be done to this complaint. And I'm sure trial counsel, which was not me, will have other ideas. Given this Court's case law on granting leave to amend, I think it's virtually impossible to argue we shouldn't at least have that. I frankly think given this Court's case law on what's enough at just the complaint stage in a complaint, that just the motion to dismiss was wrong. Maybe – maybe discovery will reveal that there was nothing about the title of this book, nothing about this medication, nothing about the erratic driving that really suggested anything about mental illness or suicidal thought. But that's not a case you decide at this stage on a motion to dismiss the complaint. I've sort of addressed a number of points. I don't know – there are other cases that support, that are more consistent with the Ninth Circuit view in the Kahn case than the First Circuit view in the Kosher case. There's the Patel case, which is distinguishable on its facts because the decedent – it wasn't the decedent, the victim there was found never to be in custody. But Patel says, quote, the person's substantive due process rights are triggered when the state restrains his liberty, not when he suffers harm. Again, that focus on not when the harm happens, but whether there's a relationship. The Kalingan case from the Seventh Circuit, you know, has that language, well, if the psychiatrist had known about this person being on the verge of suicide, then we'd have a different case. That's a case where the suicide took place after release. There's an interesting case that I cite in the footnote of my brief, Wakefield v. Thompson, where the holding was that the jailers have a duty to give someone a supply of their medication right when they're releasing them. The implication of that is there's some liability or some potential duty they have to prevent harm, even that treatment while the person's in custody right before release is relevant to harm that may happen to them after release. Let's just use that as an example. Is that kind of claim contained within the complaint? Not giving medication? Uh-huh. No. One thing that's not in the complaint that might be added, for example, if there were an amendment, is whether he was deprived of his medication while in custody, what effect that medication had, whether not having had that medication while he was in custody would have worsened his condition. Those are examples of things that could have been added. That comes back to the question asked before. Why should the district court say, okay, I've got your complaint. This complaint doesn't cut it. And counsel doesn't say, well, this does. Let me supplement with this. Why should the district court assume that plaintiffs can come up with some additional scenarios that might result in liability? I guess because there's not a big downside in this report. Well, first of all, the answer is there's case law that says that, Your Honor. There's case law that says, I quote cases at page 11 of my reply brief from this circuit that say, quote, a district court should grant leave to amend even if no request to amend the pleading was made, let alone offering what would be included in an amendment. Then there would never be a dismissal. No, I don't think that's true, Your Honor, because you dismiss. Sometimes a party is going to say, I'm sorry, there's nothing I can add, and they give up. They might amend it once or twice if they're allowed to amend it twice and get it dismissed again. At some point a court can say, I'm not going to let you amend anymore. Leave to amend should not be freely granted when it's the third or fourth or fifth or sixth time. But the case law in this circuit is really quite clear. It used to be, under the old rules of civil procedure until a few years ago, that you had a right to amend as a matter of course the first time if no answer had been filed. They did change that rule, so now it's not a matter of course. But the case law is still clear that it should be extremely liberally granted. And, again, I think the allegations were really all there, given the liberal views that has to be taken for reading pleadings here. So at least in this context, I think it was reasonable to at least give them another chance if the complaint was there wasn't enough detail here. But, frankly, I think where this case should go now is on to discovery and on to summary judgment, and then the facts will be filled out. There is some case law I cite in my briefs that talks in some depth about how this is a very sort of fact-specific area of the law. And so it really is an area where you need to get to those later stages of the process to resolve claims. Thank you. We'll give you a minute for rebuttal. Thank you, Your Honor. And we'll hear from, before the clock starts, we'll hear from whom first, and is there an agreement as to how the time is going to be allocated? Yes, Your Honor. Good morning. Dawn Oster, appearing on behalf of the county. Counsel and I have agreed that we will split the time for arguments, so seven and a half minutes. Okay. Your Honors, the government does not violate the Constitution by failing to prevent the consequences of a party's preexisting suicidal disposition, and that is exactly what is pled in the instant complaint. The complaint makes it somewhat clear. There's some vague language associated with the allegations. But overall, the complaint alleges that there was either an ongoing suicide or the suicide was in the process, or the decedent was in the process of committing suicide. In other words, the complaint alleges that prior to the time of his brief in custody period of time, that he was already in the process of being suicidal. There isn't a single allegation in the complaint, nor could there be without allegation, that the county had knowledge of his suicidal, preexisting suicidal ideations. The complaint makes it clear that there could be no special relationship, no exception to the 14th Amendment exceptions that are identified in the DeShaney case, no special relationship because the decedent was not in custody and had not been in custody for 12 hours subsequent to his release. Counsel, hypothetically, could a special relationship theory be premised on a factual allegation that the state actors had done something to someone while in custody that caused the person to become suicidal even if the suicide occurred later, say 12 hours later? I think it's clear pursuant to DeShaney that that could never occur. Could never occur? The only possible exception, the analysis that would have to apply, would be the state-created danger analysis. What about withholding medication? Could that have done it? Clearly, under the state-created exception, that could certainly be an allegation that would support that. But that's not the – there would only be the state-created danger possibility based on the preexisting condition of suicidality. And the only facts that are asserted in this particular complaint are very, very vague. And if we look at it from a practical perspective, we'd be placing a jailer, as the district court noted, in a position of becoming some sort of a mental health practitioner. And that would be a very high standard to keep a jailer or a county official or a county employee. Well, assuming it was withholding of medications, that's a fairly clear standard to apply, isn't it? If there are medications that are prescribed and the person is not given those medications while in custody, that's fairly easy to discern, isn't it? Clearly it is, Your Honor. But none of these factual allegations were ever, ever brought forward, were ever represented at the time of the hearing. In fact, counsel, the trial counsel, indeed submitted on the tentative. So there is simply nothing to suggest that that was a factual allegation upon which they relied. But if it were factually alleged, then the complaint could go forward. Clearly. But I think the important point to analyze here is there has to be some sort of an affirmative act. And the only affirmative act that was asserted in the instant complaint was one that revolved around the presence of medication that could have had any – there's no indication that it was actually prescribed to the decedent. It could have been someone else's medication in the car. And the presence of some books about suicide. That is simply not the kind of affirmative act that the Court looks to determine whether or not it's going to impose this exception on the county, particularly with relation to individuals who are not medical – mental health practitioners. It's simply too high of a bar to meet. Again, the only exception that could be possible under these circumstances would also require deliberate indifference. And there are – the facts that are asserted in the complaint, that he had a preexisting condition, that it's possible – there isn't even an allegation, pardon me, that the State was aware that those books existed in the vehicle, nor is there an allegation that they were aware that the medications were in the vehicle. There's simply a very broad-based assertion of facts that might lead. And, in fact, the complaint is alleged in terms of negligence principles. New or should have known appears throughout the complaint. And that negligence principle is insufficient to create a deliberate indifference standard, given that this is the only exception that could possibly apply given the facts that were asserted. What's your position with regard to what the county – what, if anything, the county understood about his condition when he was brought to the jail? Well, according to the complaint, there is simply no allegation other than a very broad-based the county knew. Let me take a step beyond. I mean, the complaint is bare bones. There's no question about it. But there was presentation to the district court of more specificity. Was there a suggestion made or isn't it reasonable to infer the suggestion by a plaintiff that, I mean, there must be a standard intake procedure whereby you find out something about the person in custody from the law enforcement officer who brings them in, and presumably there's some sort of screening that goes on. I've never been to this facility. I've been to other facilities, and there's a certain screening process that takes place when he comes in. I'm not aware that that occurred here, Your Honor, nor would I think – nor would I have expected it to. If the only – if the only facts that are asserted here, and certainly the only facts about which I am aware of it that haven't necessarily been presented on the record, are facts that suggest that there might have been some indication of a possibility that there was medication in the vehicle. I think the district court did a good job of analogizing those facts to a garden hose, or I believe there was another analogy that was drawn as well. It's simply an open-ended allegation that, you know, might have been a gardener. I mean, might one have anticipated that simply because there was a garden hose in the vehicle, that that would require a complete medical evaluation provided by the county. I am not aware of any additional facts, Your Honor, that would suggest that there was something more to be had here, that there should have been a medical screening or that there was one, but it was inadequate. There's nothing to suggest that that was the case. The procedural posture, you move to dismiss? Yes, Your Honor. And there was a response to that? There was, indeed. And there was no request to amend? There was no specific request to amend within that. And, again, I think from a practical perspective, as Your Honor has also recognized, that in order for the county to be on notice of what the facts are, and, again, we've had a year elapse from the time that the actual event occurred to the time of the filing of the original complaint, there has to be something that's going to put the county on notice of what might There are no administrative claims or anything like that? It was a 1983 action, Your Honor, so a claim for damages, if I recall correctly, did not – would not have been necessary for a 1983. Right. Although there is a wrongful death pendant claim, that actually remains in the case. So there is still that wrongful death. Was that remanded? It was remanded to the State court, yes, it was. Thank you. We'll hear from the State. Good morning. May it please the Court. Paul Epstein, Deputy Attorney General, representing the State of California, acting by and through the California Highway Patrol, and CHP Officer Craig Bassett. First off, I'd like to address Mr. Gunn's statement that he needs to do discovery to get additional facts that would make the complaint sufficient. Under ICBAR and Twombly, you are not entitled to do discovery in order to plead a sufficient complaint. It's exactly the opposite. You have to plead the plausible claim before you have a right to do discovery. Why is it implausible that somebody who kills himself 12 hours after being in custody, that the custody and the circumstances leading to the custody might have had something to do with the suicide? Well, there's nothing planned. What is planned? That's exactly what's planned. Now, I may stop with that. What is? But why is that implausible? What is? It's implausible because what they plead shows that the custody didn't have anything to do with it. They plead that he was already suicidal and that, in fact, he was in the process of committing suicide at the time Officer Bassett stopped him. If there had never been a stop at all, it's plausible that he would have continued and killed himself. So it's not plausible that anything that happened during custody increased his risk of suicide. If somebody is in the process of committing suicide when they're arrested and wind up being convicted and incarcerated for an extended period, and two years later, while in the custody of the Department of Corrections, succeeds in killing himself, does that mean the state can argue, well, it didn't get any worse, so even though we've had control of him for two years, we may have known all about his psychological problems? No. It would depend upon the facts of his confinement, what the prison authorities knew. If he had tried to commit suicide or indicated that he wanted to commit suicide, then there would be a burden on the prison authorities to take some action. The allegation here that the Officer Bassett should have been aware or should have inferred or somehow did know based upon the medications that were in the car and the books about suicide and firearms. Well, those are facts. Suppose we look at them and say, well, you know, it's possible the officer did figure out that this guy was troubled. And if it turns out the officer takes him in, drops him off at jail, doesn't say anything, so forth, and he kills himself, isn't that enough of an allegation to say, well, if the officer had known and didn't say anything or do anything, he has effectively worsened the person's condition? It's not sufficient because it doesn't plead deliberate indifference on the part of Officer Bassett. In order to meet the danger, in order to satisfy the danger creation theory, which I think is what Your Honor is getting at, you have to show, first of all, an objective risk, an objective risk that there was a substantial chance he would commit suicide. There's nothing pled here to satisfy that, to show that there was an objective risk. The medication and the book do not objectively show there was a substantial risk. Now, let me separate that out for a second because I want to come back to it, but I want to separate out the factual from the legal. Suppose, and I'll get out of the context of this case, suppose the highway patrol officer spots somebody on the bridge over here, sometimes in the past called Suicide Bridge, I'm told, catches somebody who's there sitting on the rail getting ready to go, and the officer succeeds in pulling him down into the car and takes him off. Now, if he drops him off and doesn't report anything about, here's a person who's suicidal, are you arguing the State would have or the officer would have no responsibility for that? Well, in that case, I think you could say that it was so obvious from the fact that he was attempting to jump from the bridge. It was obvious enough that he was suicidal. And that's the reason I set out a case like that, because that seems to me we move back to the factual part, and the question becomes, okay, was there a basis here for the officer to have been deemed responsible for determining the condition? Now, I understand your argument that what was there, the medications and the books, that's too flimsy. But is that a factual kind of question that the Court can properly dispose of on a motion to dismiss? Well, I think the Court can properly dispose of a case on a motion to dismiss, again, because of what has been pled. All they've pled, and they haven't suggested they could plead anything else, all they've pled as to the fact that there was an objective risk of suicide is he was already suicidal and he had the book and medication. The book and medication aren't sufficient for the reasons I've already given. There's no allegation that he made an attempt to commit suicide in front of Officer Bousset or that he said anything or took any action that would indicate to Officer Bousset that subjectively that he knew there was a risk of suicide, and yet he did nothing about it. They can't plead it objectively, and they certainly can't plead it subjectively. Under the Patel case, they're required to plead that the officer actually intended to expose the decedent in this case to the risk of suicide. And they haven't pled that, nor have they even suggested that they could plead that. I'd just like to briefly cover the special relationship and the danger of creation theory. The special relationship theory does not apply in this case because the decedent was not in custody when he killed himself. And the rationale for the special relationship exception dictates that result. The special relationship exception is based on the fact that when a person is in custody and his freedom is restricted and he's unable to care for himself, the State then has a duty to provide some attention. In this case, he wasn't in custody. He was free after 12 hours or a short period of time. He was free to get whatever help he thought he needed. But isn't it possible for the State to do something to someone while they're in custody that later causes them to kill themselves? Is that theoretically possible under the special relationship theory? It's theoretically not under the special relationship. If they later kill themselves after release, then it isn't theoretically possible. But in that case, the danger of creation theory might apply if you show that the authorities did anything that increased the risk of suicide. As to Officer Bissett, there are no allegations that he did anything that would increase the risk of suicide. There are no allegations that he subjectively knew there was a risk of suicide. And the Closia decision, I think, is correct in finding that there is no due process liability when the suicide occurs outside of custody. And Mr. Gunn stated that Closia says tort principles don't apply at all. That's not what the Court said. The Court said tort principles do apply, but they don't take it so far that there is no due process liability when the suicide occurred outside of custody. Do I have a motion? I think we have your argument. Thank you. All right. Thank you. I'll try to make some quick points in one minute, Your Honor. First of all, Judge Schroeder, you asked about whether there's a specific request for me to amend. There is in the oppositions to the motions to dismiss at Supplemental Excerpt of Records 79 and 126. Judge Clifton, I think the sort of chain of logic that you suggested that could lead to liability factually is exactly the sort of inferences that ought to be drawn when looking at a complaint like this. The general allegations are enough, and they suggest one possible set of inferences they suggest is the chain you suggested. And that's enough to go on to further stages in the case. There is an allegation of knowledge in this case. At Excerpt of Record 10, in which case — Knowledge on the part of whom? I'm sorry? On the part of whom? All defendants are alleged to, quote, have subjective knowledge, unquote, of the risk of defendant's suicide. That's enough. If it's not enough, we should have leave to amend to try to add something more. On the Special Relationship Doctrine, Judge Tenheimer, it's not just affirmatively doing something. There's a duty to provide care. There can be omissions also. And the special relationship is a duty to provide care. What the point of Kahn is and the point of the District Court Kosher opinion is that that duty — there may be a failure in that duty to provide care, and it doesn't have to be an affirmative doing something to worsen it, just not providing the care that you're obliged to provide. And that could result in harm later on, as in the example of not staunching bleeding, which is obviously an extreme example, and then letting the person go. Counsel — one counsel referred to the ongoing risk of suicide that's here. That doesn't matter. If there's an ongoing medical problem and someone's taken into custody, there's a duty of the State defendants to provide care for that problem. Well, let me separate out the defendants here. I'm going to take you over even the extra minute beyond the minute. Your Honor can have it. Golly. I'm allowed to do that. The — we've got two different sets of defendants here. The State case, as I understand it, rests entirely upon the highway patrol officer. Correct. Everything after his — Is the county. The victim's delivery to the jail is the county. Right. The highway patrol officer, I understand the allegation that he should have figured out from the medications in the books. And that he, in fact, did know. We allege knew or should have known, so. Well, nothing — the allegation is there, but the only — I mean, this is where you get the plausibility. Right. Because you can allege that anybody should have known anything. What makes that allegation plausible? Because ordinarily somebody who's picked up after a DUI is not going to be identified as likely suicidal. Too many people are picked up after DUIs to permit that inference by itself. So there needs to be something more to make that plausible. And so far, all I know of, and this is what I'm trying to confirm with you, are the allegations with regard to the medications and the books. Is there anything else that should — that could be offered? And this is, in fact, the potential amendment. It could be offered to support the proposition that the officer should be charged with having that knowledge. There's the erratic drivings. So let me — on all three of those things, I think there's potentially additional things that could be offered if it was necessary. And I don't think, frankly, at the pleading stage it is. You might — The pleading stage requires plausible. Right. And I — What makes the allegation plausible? I think books on — evidence of books on suicide and medication for treatment of mental illness, I think that's enough to get plausibility. Because I think the inference that can be drawn from that is you could tell they were books on how to commit suicide, and you could tell it was medication about mental illness. If something really needed to be added, I would imagine more detail could be added about the nature of the medication. And what, if any, common knowledge there may be about that medication. Something might be added about the titles of the books that made them even more dramatic than books on how to commit suicide. The erratic driving. What if it turns out the person isn't under the influence? Then the erratic driving starts to maybe, combined with the medication and the books on suicide, mean something more. Be careful. You don't want to suggest anybody picked up for erratic driving or DUI is put on suicide watch. Well, maybe — well, you certainly — if they have books on suicide and mental health medication, and there's no other explanation for the erratic driving like a blood alcohol level and or, you know, drugs in their system. So I think those are — The officer on the scene isn't going to be able to figure out that. Well, he might or might not smell alcohol on the breath. He might give a breathalyzer test on site. The drugs I'm not quite so sure, but there are officers who have specializing — you know, they look at the eyes and so on to see if someone's under the influence of methamphetamine. So I'm not completely sure of that. But I think the problem is this is all — and now I'm just addressing one little thing. The pages I gave you in my opening brief and my reply brief, I suggest a number of other examples. Frankly, though, I don't think those are things that you need to do in a complaint. Those are things you do at discovery and summary judgment. But even if you do need to do them in a complaint. We hear you. We need to do them in. Thank you. Thank you. We thank both counsel, all counsel, for your arguments in the case. The case just argued is submitted.
judges: Tunheim, Schroeder, Clifton